DAVIDOFF MALITO & HUTCHER LLP
605 Third Avenue, 34th Floor
New York, NY 10158
(212) 557-7200
David Wander, Esq. (dhw@dmlegal.com)
*Attorneys for Sheldrake Lofts, LLC*
*Debtor and Debtor in Possession*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

SHELDRAKE ESTATES CONDOMINIUMS,
LLC and SHELDRAKE LOFTS, LLC,

              Petitioners,

      -against-

VILLAGE OF MAMARONECK AND
PLANNING BOARD OF THE VILLAGE OF
MAMARONECK,

              Respondents.
---------------------------------------------------------x

Case No.

(Removal of Index No. 27823/08 from the
Supreme Court of the State of New York,
County of Westchester)

**NOTICE OF REMOVAL**

'10 CIV 07543

To:    Clerk
        United States District Court
        Southern District of New York
        300 Quarropas Street
        White Plains, NY 10601-4140

To:    Clerk
        Supreme Court of the State of New York
        Westchester County
        111 Dr. Martin Luther King Jr. Blvd
        White Plains, NY 10601

To:    Attached Service List

     **PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §1452 and Rule 9027 of the

Federal Rules of Bankruptcy Procedure, petitioner Sheldrake Lofts, LLC (**"Debtor"**) hereby

removes the state court civil action, pending in the Supreme Court for the State of New York,

00411216

Westchester County, entitled <u>Sheldrake Estates Condominiums, LLC and Sheldrake Lofts, LLC</u> <u>v. Village of Mamaroneck and Planning Board of the Village of Mamaroneck</u>, Index No. 027823 (**"State Court Lawsuit"**) to the United States District Court for the Southern District of New York (**"District Court"**), which should be referred to the United States Bankruptcy Court for the Southern District of New York (**"Bankruptcy Court"**) as part of the Debtor's chapter 11 case entitled <u>In re Sheldrake Lofts, LLC.</u>, Case No. 10-23650 (RDD) (**"Bankruptcy Case"**).

1.      On December 31, 2008, the Debtor, together with Sheldrake Estates Condominiums, LLC (together with the Debtor **"Petitioners"**), commenced the State Court Lawsuit against the Village of Mamaroneck and the Planning Board of the Village of Mamaroneck (together **"Respondents"**) pursuant to Article 78 of New York State's Civil Practice Laws and Rules.

2.      The State Court Lawsuit concerns the Debtor's request for an extension of time to start construction on its proposed 96-unit condominium project in the Village of Mamaroneck, New York (**"Project"**) and to complete construction, because a building permit for the Project had not yet been issued by the Village of Mamaroneck Buildings Department, which request was denied by Respondents.

3.      On December 18, 2009, Respondents filed an answer in the State Court Lawsuit.

4.      On July 19, 2010, the Debtor was advised by Cozen & O'Connor, its attorneys in the State Court Lawsuit, that they had a conflict and would no longer be representing the Debtor in that action.

5.      No further proceedings have been conducted in the State Court Lawsuit.

6.      On August 10, 2010 (**"Filing Date"**), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

00411216                                                    2

("**Bankruptcy Code**"). The Debtor has been authorized to continue to operate its business and manage its property as a debtor in possession, pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

7.      Removal of the State Court Lawsuit is timely under Bankruptcy Rule 9027(a)(2) as this notice is filed within 90 days after the Filing Date.

8.      This Court has jurisdiction over the State Court Lawsuit pursuant to 28 U.S.C § 1334, and the action may be removed to this Court pursuant to 28 U.S.C. § 1452

9.      Upon removal, the State Court Lawsuit would be a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (M), in that the action concerns: (i) matters relating to the administration of the estate, and (ii) the use of property of the estate.   In the event the State Court Lawsuit would not be deemed a core proceeding, it would still be integral to the Bankruptcy Case and, therefore, clearly related to the Bankruptcy Case and within this Court's bankruptcy jurisdiction. *See* In re Karta Corp., 296 B.R. 305, 309-10 (S.D.N.Y. 1003).

10.      The issues raised in the State Court Lawsuit are critical to the Debtor's efforts to reorganize. The Project is the Debtor's reason for existence. Accordingly, the outcome of the State Court Lawsuit will directly effect the Debtor's bankruptcy estate. Among other things, it will alter the Debtor's rights, options and freedom of action and directly impact upon the handling and administration of the bankruptcy estate.

11.      Copies of the Petition and Answer are annexed as **Exhibits A** and **B**, respectively.

12.      A Notice of Removal in a related state court lawsuit was filed on September 29, 2010, in the District Court, 10 Civ 07449 **(Exhibit C)**.

**WHEREFORE**, the Debtor requests that the State Court Lawsuit be removed from the

Supreme Court of the State of New York, County of Westchester, to this Court.

Dated: New York, New York
      October 1, 2010

                DAVIDOFF MALITO & HUTCHER

                By: _____
                     David Wander, Esq.
                     605 Third Avenue, 34th Floor
                     New York, NY 10158
                     dhw@dmlegal.com
                     Attorneys for Sheldrake Lofts LLC
                     Debtor and Debtor in Possession

00411216

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK   :
                    : SS.:

COUNTY OF NEW YORK  :

Harley Traven, being duly sworn, deposes and says:

    1.     I am over 18 years of age and not a party to this action.

    2.     On October 1, 2010, I served a true and accurate copy of the within document to

be served upon the persons on the attached list:

    ☐    **FIRST CLASS MAIL,** by mailing a true copy of the attached papers, enclosed and properly sealed in a postpaid envelope, which I deposited in an official depository under the exclusive care and custody of the United States Postal Services within the State of New York;

    ☒    **FEDERAL EXPRESS,** by depositing a true copy thereof enclosed in a Federal Express wrapper and made proper arrangements for delivery of same;

    ☐    **EXPRESS MAIL,** by mailing a true copy of the attached papers, enclosed and properly sealed in a postpaid Express Mail envelope, which I deposited in an official depository for same under the exclusive care and custody of the United States Postal Services;

    ☐    **ELECTRONIC MEANS,** by facsimile, email or other electronic means as set forth on the annexed list.

Signature: _Harley Traven_

Sworn to before me on October 1, 2010.

_____
Notary Public

DAVID WANDER
Notary Public, State of New York
No. 02WA5033368
Qualified in New York County
Commission Expires January 25, 2011

00411216

5

## Service List

Clerk
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, NY  10601-4140

Clerk
Supreme Court of the State of New York
Westchester County
111 Dr. Martin Luther King Jr. Blvd
White Plains, NY 10601

Kenneth G. Roberts, Esq.
Cozen O'Connor
277 Park Avenue
New York, NY 10172
kroberts@cozen.com

Arturo M. Boutin
D'Amato & Lynch, LLP
Two World Financial Center
New York, New York 10282
Aboutin@damato-lynch.com

SUPREME COURT OF THE STATE OF
NEW YORK COUNTY OF WESTCHESTER
--------------------------X
SHELDRAKE ESTATES
CONDOMINIUMS, LLC and
SHELDRAKE LOFTS, LLC

             *Petitioners,*    Index No.: 08/27823

    -against-               Date Filed:

VILLAGE OF MAMARONECK and
PLANNING BOARD OF THE
VILLAGE OF MAMARONECK       NOTICE OF PETITION
                          UNDER CPLR ARTICLE 78

         *Respondents.*

                    X (ORAL ARGUMENT REQUESTED)

**FILED**

DEC 3 1 2008

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

**PLEASE TAKE NOTICE:**

    that upon the annexed Petition of the Petitioners,
verified on December 31, 2008, and the exhibits attached
hereto, the Petitioners shall move an IAS part of this
Court on the 26ˢᵗ day of January, 2009 at 9:30 o'clock in
the forenoon of that day, or as soon thereafter as counsel
may be heard, at the County Courthouse located at 111 Dr.
Martin Luther King, Jr., Blvd., White Plains, New York, for
judgment pursuant to CPLR Article 78 finding that
petitioner developer's request under the Village of
Mamaroneck Code section 342-83 to extend the time in which
to start construction and thereafter finish construction of
petitioner's project, a 96 residential dwelling unit
subdivision known as "Sheldrake Estates" ("Project") should
have been granted, and that such denial was arbitrary and
capricious, an abuse of discretion, and without any record
to support the respondent's denial of this request.
Granting Petitioner attorneys fees and expenses in
presenting this motion and for such other and different
relief as the Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE:**

    That pursuant to CPLR §7804 or other relevant CPLR
provisions, Petitioner requires that answering papers be
served upon the undersigned on January 21, 2009, or no less
than five (5) days  before the return date of January 26,
2009.

Dated:   White Plains, New York
          December 31, 2008


                        Respectfully,


                        GLENN B. ALLYN
                        Allyn, Hausner & Montanile, LLP
                        399 Knollwood Road
                        Suite 114
                        White Plains, New York 10603
                        (914) 733-3280


To:  Respondents:
     Village of Mamaroneck and
     PLANNING BOARD OF THE
     VILLAGE OF MAMARONECK
     Village Hall
     P.O. Box 369
     Mamaroneck, New York 10543
     (914) 777-7731

17.   On behalf of respondent, Village of Mamaroneck, Bob Galvin signed the site plan and upon information and belief the construction drawings on December 28, 2007.

18.   Further by resolution of the respondent Planning Board, the prior approval was memorialized and final changes to the sub-division map determined and approved. See Exhibit 7 copy of Planning Board resolution filed with respondent's clerk on January 8, 2008.

19.   **By operation of the respondent's law, the building permit was to be approved or disapproved within a reasonable time from receipt.** (Village of Mamaroneck Code section 126-12). **Instead it took respondent over six months to approve the construction drawings, so that the building permit could be processed for approval, and for which formal disapproval was only issued on December 8, 2008.**

20.   On numerous occasions Petitioners asked for the status of the construction drawing approvals, only to find that the construction drawings were left on top of a filing cabinet, in the building department's office and not in fact being reviewed as required.

21.   Since the plans were just sitting collecting dust, petitioner asked what he could do to expedite the process and was told that he could overnight the plans to Noel Shaw, respondent's reviewing, and consulting engineer, for his sign off, which in fact petitioner did.  See Exhibit 6, a true copy of the UPS receipt and tracking information.

22.   At this point it was around June 12, 2008. Shortly thereafter full construction approvals were granted by respondent, as Noel Shaw had signed off on these plans.

23.   At all of the above times, respondent knew that they were adopting a new local law requiring a reduction in floor plan ratios for all projects in the Village, local law #5 ("New Law"). Subsequent to the above final approvals, respondent's  Local Law No. 5-2008 (the New Law) was made effective with an effective date of May 15, 2008. Attached hereto as Exhibit 7  is a true copy of the New Law.

24.   During the approval process of petitioners building permit application and in December 2007, while respondent placed a moratorium on all building permits, petitioners' building permit application was allowed to continue its processing in order for it to be approved.  An objective indication that the New Law would not apply to the Project.  Consequently, petitioner was continually assured by both respondent's acts and by respondent's themselves, that the New Law would not apply to its project.

25.  After the respondent's outside engineering consultant finally approved the construction drawings as part of the building permit application, on or around June 12, 2008, (which was well pass the date the New Law was enacted on May 15, 2008)and after numerous inquires by petitioner without answer.

29. It was not until December 8, 2008, that the formal notice of disapproval with respect to the building permit application filed on December 27, 2007 was issued, almost one year later.

30. The disapproval at that point was not in accordance with the respondent's own laws and regulations, whereby the respondent is required to "approve or disapprove a building permit applications within a reasonable time."

31. The respondent's inactions and omissions in failing to review and approve the Project and building permit application timely, combined with misrepresentations and inaccuracies cannot under any assessment be interpreted as a "reasonable time."

32. Here, approval, or disapproval within a reasonable time as was required of the respondent building department, would have allowed petitioners, if approved, time to start construction within the one year period, if disapproved, time to provide required materials for approvals before the New Law took effect on May 15, 2008 and/or to make application to the respondent well before the one year period had run, and thereafter time to make a challenge to any denial. Simply because respondent's did not comply with their code requirements and intentionally or innocently delayed the filing of the construction plans,

and the approval of the building permit, the New Law applied and the building permit application denied nine days before the one year period had run.  Upon information and belief, this conduct by respondent's is believed to be intentionally conducted in order to benefit respondent and cause the petitioners harm.   If so, such conduct should result in the award of punitive damages against respondents.

33.  During the course of petitioners' approval process for the Project, petitioners were caused to expend large sums of monies and improve the underlying property of the Project, as was required of the respondent.

34.  The respondent during the first year of re-zoning of the Project required petitioners to clean up the site. The site at the time of the application process had as an owner occupant, a car crushing business.  At the respondent's request, and in furtherance of the application process, this occupancy was vacated. In order to terminate that occupancy, and comply with respondent's requirements, petitioners had to pay the occupants the sum of $160,000.00 per year, which payments continued to even date. Additionally, petitioners had to pay real estate taxes, insurance and maintenance on the property, for which the tenants had been obligated to pay under their occupancy. This amounted to approximately $90,000.00 per year, and paid through even date.

35.   Additionally, petitioner spent approximately $190,000.00 for the initial clean up the site, in accordance with respondent's requests to do so, during the approval process.

36.   The year one expenditures totaled approximately $430,000.00 excluding the costs associated with borrowing monies to pay these amounts and soft costs for the development of the project during this time.

37.   The year 2 and year 3 totals amounted to approximately $500,000.00, excluding the costs associated with borrowing monies to pay these amounts and soft costs for the development of the project.

38.   The interest costs associated with paying for the improvements required by respondents in years 1-4 are in access of $350,000.00.

39.   In 2007 (year 4 of the Project), the respondent required petitioner to remediate the site in accordance with the DEC regulations. contingent and prior to receiving approvals, which should not have been required in the first instance to obtain approvals, instead approvals granted conditionally on the subsequent remediation of the Project site.

40.   The remediation costs totaled approximately $1,200,000.00.  The remediation was required by respondents before approvals would be given on the Project.

41. In so doing, respondent caused petitioner to loose 18-21% grants from New York Brownfield programs. Such grants upon information and belief are calculated based upon a formula based upon the total cost of the project at issue, here approximately in access of $47,000,000.00, which would have resulted in approximately $9,000,000.00 to $10,000,000.00 in loss of grants and damages to petitioners. In addition, the interest costs associated with paying for the improvements required by respondent in that given year totaled approximately $210,000.00.

42. As a result of re-zoning that was required of the Project M-1 (commercial multi use) to RM-3 (only residential use), a prior business such as the one petitioner vacated at respondent's request, or other commercial uses under the former M-1 zoning could no longer conduct business on the site. This results in significant future loss of income and rental options, which the Project was at all times contemplated to replace such income production. Moreover, if the New Law applies to the site now, with the re-zoning, nothing of any significance could be built on the site, and/or any project of the seize to secure adequate financing. Further petitioners financing is based upon the approval of 96 residential dwelling units, something short of this will result in loss of financing.

43.   The Project with an "as of right" building of 114 residential dwelling units, had an "as is" value of the underlying property set at $18,600,000.00, see Exhibit 10, at page 90, and a as built value of in access of $59,150,000.00, page 80. Up and until August 8, 2008, petitioner spent $14,000,000.00 to $15,000,000.00 in total on the Project which included the costs to purchase the underlying property, the year 1-4 costs imposed upon petitioners by respondent, the soft costs for developing the project and the interest costs associated with borrowing the monies for the Project.  See Exhibit 11, a true copy of transaction statement evidencing the monies spent in connection with the Project and as referenced in this paragraph.

44.   Likewise on or about December 31, 2007, petitioner paid the respondent the sum of $240,000.00 in respect to recreation fees and in accordance with final approval requirements of the respondent.  Approximately $900,000.00 was paid by petitioner in respect to engineering, architectural, and other development related expenditures, "soft cost" expenses for the development of the Project.

45.   The purported purpose of Local Law 5-2008 was not intended to apply to the Project, but instead the intent was that "Floor Area Ratio (FAR) controls were incorporated into the Village's Zoning Code because an increasing number of extremely large homes impacted visually upon nearby

properties.  … The purpose of this local law is to amend
and clarify building floor area ratios and their
calculation … to assure that new and expanded buildings
will be in scale with surrounding buildings and the
character of the community." See Exhibit 9.

46.  Yet this New Law which was promoted, upon
information and belief, by respondent's mayor and a new
board of trustees, with the knowledge of the planning
board, is now apparently being used to eliminate the
Project after it was already approved by this very same
planning board and praised by the respondent's prior board
of trustees at its inception.
The planning board granted sub-division approvals to
petitioners, and site plan approvals which allowed 96
residential units.  Which unit count was original reduced
from 114 units to 90 units and 6 low income residential
units, making the total 96 units.

47.  Moreover, if the planning board really wanted the
proposed New Law to apply, why did it not place these
requirements on the Petitioner when the petitioner was
seeking approvals and confirming the now approved plans to
planning board requirements, and after the board of
trustees and planning board caused petitioner to spend
and/or pay more then $2,130,000.00 (year 1-4) direct costs
to clean up, and remediate the Project, before respondent

would grant, and then granted sub-division and site plan approvals and changed the zoning use so the Project could be built as contemplated. Additionally, petitioners directly paid respondents $240,000.00 in recreation use fees, which was a condition of final sub-division approvals.

48.   The Project is not an "extremely large home" and consequently should not even be considered a building enumerated in the New Laws purpose and intent.

49.   **After five years of improvements made to the Project at respondents request, and substantial costs incurred by Petitioners**, at this stage, and after final subdivision and site plan approvals were granted, it would be inequitable, just plan unfair, and cause petitioners serious economic hardship or loss to deny the petitioners request to renew the one year period.

CONCLUSION:

50.   It is crystal clear that the petitioners have both undertaken substantial construction to the underlying property and Project, and made substantial expenditures in respect of the underlying property, and the Project, prior to the respondent's adoption of the New Law on May 15, 2008, and in accordance with respondent's

mandates and assurances that the Project would be approved. Likewise, there has been no delays by petitioners in respect to the process and making application for a building permit.

51. Accordingly, because of the substantial construction and substantial expenditures made, and the petitioners diligence in moving the Project and attempting to have a building permit issued, and the respondents failure to disapprove or approve the building permit in a reasonable time, and/or because of respondents other delays, petitioners request should have been granted.

52.   It is also clear that the petitioners will face and have faced substantial hardships and will incur significant economic loss's if the request is not granted here.

53.   The petitioners in the process of approvals for the Project had to re-zone the underlying property, which was required of petitioners in furtherance of its seeking sub-division and site plan approvals by respondent.

54.   All this was done with the absolute blessings of the respondent, in fact the respondent encouraged the development of this Project as it alleviated both an eye

saw from the community and an existing use that was
potentially harming the environment, and/or that was pre-
existing and use detrimental the respondents master zoning
plans.

55.   But rather the allow the petitioners to develop
the Project as the respondent's had at all times approved,
after the petitioner spent millions of dollars cleaning up
the property, and the remediation any environmental
hazards, and vacating the prior offending paying tenants,
the respondent took an unreasonable amount of time to
disapprove the petitioner's building permit, nine days
before the year had expired.

56.   In fact, the petitioners property is now in
foreclosure, because without an extension here, which
basically nullifies the prior site plan approval, no
institution will lend any monies toward the property, and
the property has a negative value to the loans already
secured.

57.   It is inequitable to say the least, that the
respondent should benefit after requiring the petitioners
to spend large sums of monies here and improve the property
and eliminate a potential harm to the community, all with

promises that the Project would be approved and in fact

approving the sub-division and site plan for 96 residential

dwelling units, and thereafter taking almost one year to

disapprove the petitioner's building permit and therefore

self imposing the one year period to run, and thereafter

not grant a request to renew this very same period

respondents acts caused to run.

58.   The decision is not supported by any appropriate

record.  Same is arbitrary and capricious, and the delays

here imposed by respondent, not petitioners.

59.   Under the Village of Mamaroneck Code section

342-80, the respondent planning board had the ability to

waive any requirements here based upon same resulting in

"extraordinary and unnecessary hardships."  Since the

respondent has already enumerated that the Project is a

benefit to the community and not particularly identified

that a waiver here would be detrimental to the public

health, safety of general welfare of the community, or have

any other particularized effect, waiver was appropriate

under section 342-80.

60.   Finally, the granting of renewal here, does not

allow the petitioner to build, petitioner would still have

to resolve the new FAR issue and show that the NYS fire

code (coincidentally, the building permit disapproval does
not site this NYS fire code at all only the FAR) does not
apply in order to obtain a building permit, consequently
any mistaken reliance on the FAR and NYS fire code as a
reason for denial is both not applicable, and arbitrary and
capricious reasoning.

61.   Petitioner is in the process of applying to the
Zoning Board of Appeals for a decision that both the FAR
and NYS Fire code does not apply to petitioners approved
Project.   Had the respondent timely denied the petitioners
building permit, those issues could have been addressed
well before the one year period had run.   Both of which
were imposed upon petitioner well after site plan approvals
and warranties that same did not apply to the Project and
during the one year period.   Which in itself is reason to
grant the request to renew in order to comply and/or
determine that these new requirements do not apply.

62.   The respondent caused petitioners time to run,
and then denied a legitimate request to renew this time
period in order to obtain a building permit, and/or apply
to the Zoning Board of Appeals with respect to having this
board determine whether items as respondent indicates

apply, or do not, and then thereafter challenge same in this Court with time to spare had the building permit initially been denied "in a reasonable time" as was required by respondents law.

63. Based upon the foregoing the respondents denial should be vacated and the respondent directed to approve the petitioners request to renew the one year and two year time frames accordingly.

64. The denial of the petitioners request was arbitrary and capricious an abuse of discretion and not supported by a record. Granting the request has no impact on the community at all, as the petitioner still has to resolve the FAR and NYS fire code issues before a building permit can be issued. Which in itself supports the contention that the denial was simply arbitrary and capricious and without fact or objective reason.

**WHEREFORE**, petitioner requests that this Court enter Judgment

(1) Vacating the denial of petitioners request to renew its site plan approval under section 342-83 of the respondents code,

(2) An award of punitive damages against the respondent in an amount determined by a jury or this honorable Court, and

(3) And granting Petitioner attorneys fees, cost of this litigation, and such other and different relief as the Court deems just and proper.

Dated:    White Plains, New York
          December 3✦, 2008

                            Respectfully,

                            GLENN B. ALLYN

To:  Respondent:
     Village of Mamaroneck
     Village Hall
     P.O. Box 369
     Mamaroneck, New York 10543
     (914) 777-7731

UPREME COURT OF THE STATE OF
NEW YORK COUNTY OF WESTCHESTER
----------------------------X

SHELDRAKE ESTATES
CONDOMINIUMS, LLC
                    *Petitioner,*

                                    Index No.:
       -against-                    Date Filed: *12/ 31/ o 8*

VILLAGE OF MAMARONECK
*plenary suit a village of municl*
                    *Respondent.*
_____X

       STATE OF NEW YORK      }
                              }SS:
       COUNTY OF WESTCHESTER  }


       Offer Attia duly sworn deposes and says:

       1.   I am the owner and managing member of the
petitioners in the within action and make this verification
on behalf of these petitioners.

       2.   I have read the foregoing, and know the contents
thereof, and the same is true to my knowledge, except to
matters therein stated to be alleged by information and
belief, and as to those allegations I believe same to be
true and correct.


                          BY: _____
                              OFFER ATTIA


       Sworn to before me this
       *30th* day of December, 2008


       _____
       NOTARY PUBLIC

Part 130
Certification

By signing a paper, an attorney or party certifies that, to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, (1) the presentation of the paper or the contentions therein are not frivolous as defined in Section 130-1.1(c), Rules of the Chief Administrator, and (2) where the paper is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom, and (ii) the matter was not obtained in violation of 22 NYCRR 1200.41-a [DR 7-111].

The undersigned has complied with subsection (c) of Section 130-1.1 and Section 130-1.1-a, Rules of the Chief Administrator.

Attorneys for Petitioners

GLENN B. ALLYN
Allyn, Hausner & Montanile, LLP
399 Knollwood Road
Suite 114
White Plains, New York 10603
(914) 733-3280

December 30, 2008

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------------------X
SHELDRAKE ESTATES CONDOMINIUMS,          :
LLC and SHELDRAKE LOFTS, LLC,            :       Index No.: 08-27823
                                         :
                        Petitioners,     :       Hon. Robert A. Neary
                                         :
            -against-                    :       ANSWER TO THE
                                         :       VERIFIED PETITION
VILLAGE OF MAMARONECK and                :
PLANNING BOARD OF THE VILLAGE OF         :           RECEIVED
MAMARONECK,                              :
                                         :          DEC 1 3 2009
                        Respondents.     :
                                         :        R........ NEARY
-----------------------------------------------------X    SUPREME COURT

        Respondents, VILLAGE OF MAMARONECK and PLANNING BOARD

OF THE VILLAGE OF MAMARONECK by their attorneys, D'AMATO & LYNCH, LLP,

as and for their Answer to the Petition of Petitioners Sheldrake Estates Condominiums,

LLC and Sheldrake Lofts, LLC, show this Court and allege as follows:

        1.      Deny knowledge or information sufficient to form a belief as to the

truth of each and every allegation set forth in paragraph "1" of the Verified Petition.

        2.      Admits the allegations contained in paragraph "2" of the Verified

Petition.

        3.      Deny each and every allegation set forth in paragraph "3" of the

Verified Petition.

        4.      Deny knowledge or information sufficient to form a belief as to the

truth of each and every allegation set forth in paragraph "4" of the Verified Petition, but

admits petitioners' request was denied.

#343816v1

                                        1

   5.  Deny each and every allegation set forth in paragraph "5" of the

Verified Petition.

   6.  Deny each and every allegation set forth in paragraph "6" of the

Verified Petition.

   7.  Deny each and every allegation set forth in paragraph "7" of the

Verified Petition.

   8.  Deny each and every allegation set forth in paragraph "8" of the

Verified Petition.

   9.  Deny each and every allegation set forth in paragraph "9" of the

Verified Petition.

   10.  Deny each and every allegation set forth in paragraph "10" of the

Verified Petition.

   11.  Deny each and every allegation set forth in paragraph "11" of the

Verified Petition.

   12.  Deny knowledge or information sufficient to form a belief as to the

truth of each and every allegation set forth in paragraph "12" of the Verified Petition.

   13.  Deny each and every allegation set forth in paragraph "13" of the

Verified Petition.

   14.  Deny each and every allegation set forth in paragraph "14" of the

Verified Petition.

   15.  Deny each and every allegation set forth in paragraph "15" of the

Verified Petition.

2

#313818v1

16.      Deny each and every allegation set forth in paragraph "16" of the Verified Petition.

17.      Deny each and every allegation set forth in paragraph "17" of the Verified Petition.

18.      Deny each and every allegation set forth in paragraph "18" of the Verified Petition.

19.      Deny each and every allegation set forth in paragraph "19" of the Verified Petition.

20.      Deny each and every allegation set forth in paragraph "20" of the Verified Petition.

21.      Deny each and every allegation set forth in paragraph "21" of the Verified Petition.

22.      Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "22" of the Verified Petition.

23.      Deny each and every allegation set forth in paragraph "23" of the Verified Petition.

24.      Deny each and every allegation set forth in paragraph "24" of the Verified Petition.

25.      Deny each and every allegation set forth in paragraph "25" of the Verified Petition.

26.      Deny each and every allegation set forth in paragraph "26" of the Verified Petition.

3

#3<3818v1

27.     Deny each and every allegation set forth in paragraph "27" of the Verified Petition.

28.     Deny each and every allegation set forth in paragraph "28" of the Verified Petition.

29.     Deny each and every allegation set forth in paragraph "29" of the Verified Petition.

30.     Deny each and every allegation set forth in paragraph "30" of the Verified Petition.

31.     Deny each and every allegation set forth in paragraph "31" of the Verified Petition and refer all questions of law to the Court.

32.     Deny each and every allegation set forth in paragraph "32" of the Verified Petition.

33.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "33" of the Verified Petition.

34.     Deny each and every allegation set forth in paragraph "34" of the Verified Petition.

35.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "35" of the Verified Petition.

36.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "36" of the Verified Petition.

37.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "37" of the Verified Petition.

#343818v1

4

38.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "38" of the Verified Petition.

39.     Deny each and every allegation set forth in paragraph "39" of the Verified Petition.

40.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "40" of the Verified Petition.

41.     Deny each and every allegation set forth in paragraph "41" of the Verified Petition.

42.     Deny each and every allegation set forth in paragraph "42" of the Verified Petition.

43.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "43" of the Verified Petition.

44.     Deny each and every allegation set forth in paragraph "44" of the Verified Petition, except admits petitioners remitted $240,000.00 in a recreation fee.

45.     Deny each and every allegation set forth in paragraph "45" of the Verified Petition.

46.     Deny each and every allegation set forth in paragraph "46" of the Verified Petition.

47.     Deny each and every allegation set forth in paragraph "47" of the Verified Petition, except admit that petitioners paid a $240,000.00 recreation fee.

48.     Deny each and every allegation set forth in paragraph "48" of the Verified Petition.

5

{343818v1

49.     Deny each and every allegation set forth in paragraph "49" of the Verified Petition.

50.     Deny each and every allegation set forth in paragraph "50" of the Verified Petition.

51.     Deny each and every allegation set forth in paragraph "51" of the Verified Petition.

52.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "52" of the Verified Petition.

53.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "53" of the Verified Petition.

54.     Deny each and every allegation set forth in paragraph "54" of the Verified Petition.

55.     Deny each and every allegation set forth in paragraph "55" of the Verified Petition.

56.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "56" of the Verified Petition.

57.     Deny each and every allegation set forth in paragraph "57" of the Verified Petition.

58.     Deny each and every allegation set forth in paragraph "58" of the Verified Petition.

59.     Deny each and every allegation set forth in paragraph "59" of the Verified Petition.

1343818v1

60.    Deny each and every allegation set forth in paragraph "60" of the Verified Petition.

61.    Deny each and every allegation set forth in paragraph "61" of the Verified Petition.

62.    Deny each and every allegation set forth in paragraph "62" of the Verified Petition.

63.    Deny each and every allegation set forth in paragraph "63" of the Verified Petition.

64.    Deny each and every allegation set forth in paragraph "64" of the Verified Petition.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

65.    Upon information and belief, this action should not proceed in the absence of various entities and persons who should be parties.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

66.    Upon information and belief, this action is barred by the applicable statute of limitations.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

67.    Upon information and belief, the Petition fails to state a cause of action against the answering respondents.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

68.    The answering respondents not being fully advised as to all of the facts and circumstances surrounding the allegations complained of herein, hereby asserts

7

(343818v1

and reserves unto themselves the defenses of accord and satisfaction, arbitration and award, discharge of bankruptcy, estoppel, failure of consideration, failure to exhaust administrative remedies, laches, Statute of Limitations, waiver, and other matter constituting an avoidance or an affirmative defense which further investigation of this matter may prove applicable herein.

WHEREFORE, respondents Village of Mamaroneck and Planning Board of the Village of Mamaroneck demand Judgment dismissing the Verified Petition together with costs and disbursements of this action, and such other, further and different relief as this Court deem just and proper.

Dated: New York, New York
           December 15, 2009

                                    Yours, etc.

                                    D'AMATO & LYNCH, LLP

                                    BY: _____
                                    ARTURO M. BOUTIN, ESQ.
                                    Attorneys for Respondents
                                    VILLAGE OF MAMARONECK and
                                    PLANNING   BOARD   OF   THE
                                    VILLAGE OF MAMARONECK
                                    70 Pine Street
                                    New York, New York 10270
                                    (212) 269-0927
                                    Our File No.: 101-75536

TO:   ALLEYN, HAUSNER & MONTANILE, LLP
      Attorneys for Petitioners
      399 Knollwood Road
      Suite 114
      White Plains, New York 10603
      (914) 733-3280

                                    8

#363818v1

## ATTORNEY'S VERIFICATION

ARTURO M. BOUTIN, an attorney duly admitted to practice in the Courts of the State of New York, affirms the following under penalty of perjury, being duly sworn, deposes and says:

1.    I am associated with the firm of D'AMATO & LYNCH, LLP, the attorneys of record for respondents, VILLAGE OF MAMARONECK and PLANNING BOARD OF THE VILLAGE OF MAMARONECK, in the within action.

2.    I have read the foregoing VERIFIED ANSWER and know the contents thereof.

3.    The same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and, as to those matters, I believe them to be true.

4.    The reason this Verification is made by me and not by the respondents VILLAGE OF MAMARONECK and PLANNING BOARD OF THE VILLAGE OF MAMARONECK, is because said respondents is not within the county where I have my office.

5.    The grounds for my belief as to all matters in the Verified Answer not stated to be upon my knowledge are based upon a review of the file and conversations with the client.

Dated: New York, New York
        December 15, 2009

ARTURO M. BOUTIN

9

#343816v1

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK )
) ss.:
COUNTY OF NEW YORK )

Arlett Villanueva, being duly sworn, deposes and says:

Deponent is not a party to the action, is over 18 years of age and resides in Queens, New York. On December 15, 2009 deponent served the within Answer to the Verified Petition upon:

ALLEYN, HAUSNER & MONTANILE, LLP
Attorneys for Petitioners
399 Knollwood Road
Suite 114
White Plains, New York 10603
(914) 733-3280

by depositing true copies of same in a post-paid wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York, properly addressed to said attorneys at the above addresses designated by them for that purpose.

_Arlett Villanueva_
Arlett Villanueva

Sworn to before me this
15th day of December, 2009

_Notary Public_
Notary Public

ALFRED A. D'AGOSTINO, JR.
Notary Public, State of New York
No. 02DA4696720
Qualified in Nassau County
Commission Expires ___2/20/20___

#314776v1

DAVIDOFF MALITO & HUTCHER LLP
605 Third Avenue, 34th Floor
New York, NY 10158
(212) 557-7200
David Wander, Esq. (dhw@dmlegal.com)
*Attorneys for Sheldrake Lofts, LLC*
*Debtor and Debtor in Possession*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

SHELDRAKE ESTATES CONDOMINIUMS,
LLC and SHELDRAKE LOFTS, LLC,

        Petitioners,

    -against-

VILLAGE OF MAMARONECK, VILLAGE
OF MAMARONECK BUILDING
DEPARTMENT, VILLAGE OF
MAMARONECK BUILDING INSPECTOR,
VILLAGE OF MAMARONECK DIRECTOR
OF BUILDING CODE ENFORCEMENT
AND LAND USE ADMINISTRATION,
VILLAGE OF MAMARONECK ZONING
BOARD OF APPEALS

        Respondents.

-------------------------------------------------------------x

**FILED**
SEP 29 2010
**USDC WP SDNY**

**'10 CIV 07449**

Case No.

**JUDGE SEIBEL**

(Removal of Index No. 11288/09 from the
Supreme Court of the State of New York,
County of Westchester)

**NOTICE OF REMOVAL**

To:    Clerk
        United States District Court
        Southern District of New York
        300 Quarropas Street
        White Plains, NY 10601-4140

To:    Clerk
        Supreme Court of the State of New York
        Westchester County
        111 Dr. Martin Luther King Jr. Blvd
        White Plains, NY 10601

To:    Attached Service List

00410195

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure, petitioner Sheldrake Lofts, LLC ("**Debtor**") hereby removes the state court civil action, pending in the Supreme Court for the State of New York, Westchester County, entitled <u>Sheldrake Estates Condominiums, LLC and Sheldrake Lofts, LLC v. Village of Mamaroneck, Village of Mamaroneck Building Department, Village of Mamaroneck Building Inspector, Village of Mamaroneck Director of Building Code Enforcement and Land Use Administration, Village of Mamaroneck Zoning Board of Appeals,</u> Index No. 11288/09 ("**State Court Lawsuit**") to the United States District Court for the Southern District of New York ("**District Court**"), which should be referred to the United States Bankruptcy Court for the Southern District of New York ("**Bankruptcy Court**") as part of the Debtor's chapter 11 case entitled <u>In re Sheldrake Lofts, LLC.,</u> Case No. 10-23650 (RDD) ("**Bankruptcy Case**").

1.    On May 11, 2009, the Debtor,  together with Sheldrake Estates Condominiums, LLC (together with Debtor "**Petitioners**"), commenced the State Court Lawsuit against the Village of Mamaroneck, the Village of Mamaroneck Building Department, the Village of Mamaroneck Building Inspector, the Village of Mamaroneck Director of Building Code Enforcement and Land Use Administration, and the Village of Mamaroneck Zoning Board of Appeals (together, "**Respondents**") pursuant to Article 78 of New York State's Civil Practice Laws and Rules.

2.    The State Court Lawsuit concerns the Debtor's right to develop a 96-unit condominium project in the Village of Mamaroneck, New York ("**Project**"). The Debtor seeks a judgment, *inter alia*, requiring the Respondents to issue a building permit for the Project to the Debtor.

00410195

2

3.   On December 15, 2009, Respondents filed an answer in the State Court Lawsuit.

4.   On July 19, 2010, the Debtor was advised by Cozen & O'Connor, its attorneys in the State Court Lawsuit, that they had a conflict and would no longer be representing the Debtor in that action.

5.   No further proceedings have been conducted in the State Court Lawsuit.

6.   On August 10, 2010 ("**Filing Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* ("**Bankruptcy Code**"). The Debtor has been authorized to continue to operate its business and manage its property as a debtor in possession, pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

7.   Removal of the State Court Lawsuit is timely under Bankruptcy Rule 9027(a)(2) as this notice is filed within 90 days after the Filing Date.

8.   This Court has jurisdiction over the State Court Lawsuit pursuant to 28 U.S.C § 1334, and the action may be removed to this Court pursuant to 28 U.S.C. § 1452

9.   Upon removal, the State Court Lawsuit would be a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (M), in that the action concerns: (i) matters relating to the administration of the estate, and (ii) the use of property of the estate.   In the event the State Court Lawsuit would not be deemed a core proceeding, it would still be integral to the Bankruptcy Case and, therefore, clearly related to the Bankruptcy Case and within this Court's bankruptcy jurisdiction. *See* In re Karta Corp., 296 B.R. 305, 309-10 (S.D.N.Y. 1003).

10.   The issues raised in the State Court Lawsuit are critical to the Debtor's efforts to reorganize. The Project is the Debtor's reason for existence. Accordingly, the outcome of the State Court Lawsuit will directly effect the Debtor's bankruptcy estate. Among other things, it

will alter the Debtor's rights, options and freedom of action and directly impact upon the handling and administration of the bankruptcy estate.

11.     Copies of the Petition and Answer are annexed as **Exhibits A and B**, respectively

**WHEREFORE**, the Debtor requests that the State Court Lawsuit be removed from the Supreme Court of the State of New York, County of Westchester to this Court.

Dated: New York, New York
        September 28, 2010

                                        DAVIDOFF MALITO & HUTCHER

                                        By: _____
                                              David Wander, Esq.
                                        605 Third Avenue, 34th Floor
                                        New York, NY 10158
                                        dhw@dmlegal.com
                                        Attorneys for Sheldrake Lofts LLC
                                        Debtor and Debtor in Possession

00410195                          4

**000066810**

SUPREME COURT OF THE STATE OF
NEW YORK COUNTY OF WESTCHESTER
------------------------------X
SHELDRAKE ESTATES
CONDOMINIUMS, LLC and
SHELDRAKE LOFTS, LLC

                  **11288/09**

         Petitioners,     Index No.:

  -against-            Date Filed: **5/11/09**

VILLAGE OF MAMARONECK,        NOTICE OF PETITION
VILLAGE OF MAMARONECK BUILDING   UNDER CPLR ARTICLE 78
DEPARTMENT, VILLAGE OF MAMARONECK
BUILDING INSPECTOR, VILLAGE OF
MAMARONECK DIRECTOR OF BUILDING CODE
ENFORCEMENT AND LAND USE ADMINISTRATION,
VILLAGE OF MAMARONECK ZONING BOARD OF APPEALS

         Respondents.
                   X (ORAL ARGUMENT REQUESTED)

*FILED*

*MAY 11 2009*
*TIMOTHY C. IDONI*
*COUNTY CLERK*
*COUNTY OF WESTCHESTER*

**PLEASE TAKE NOTICE:**

    that upon the annexed Petition of the Petitioners,
verified on May 11, 2009, and the exhibits attached hereto,
the Petitioners shall move an IAS part of this Court on the
26th day of June, 2009 at 9:30 o'clock in the forenoon of
that day, or as soon thereafter as counsel may be heard, at
the County Courthouse located at 111 Dr. Martin Luther
King, Jr., Blvd., White Plains, New York, for judgment
pursuant to CPLR Article 78 (1) finding that petitioner
developer acquired a vested right to pursue the development
of the project here under prior zoning regulations, and
ordering that the respondents issue building permits for
petitioner's project known as "Sheldrake Estates"
("Project") subject to compliance with that certain letter
sent by respondent on July 24, 2008, however not requiring
petitioner to comply with the respondent's Local Law #5
enumerated therein. (2) Reversing that decision of the
respondent Zoning Board of Appeals ("ZBA") dated April 9,
2009, which denied petitioner's request for a variance in
respect to Section 342-38 of the Zoning Code.   To provide
petitioner with a variance in respect to a 1.6 Floor Area
Ration ("FAR") instead of the 1.2 applied by the ZBA. The
ZBA rendered a decision which was arbitrary and capricious
and/or did not appropriate apply the correct criteria in
rendering its decision here.   (3) The award of damages

resulting from respondents acts.  And granting Petitioner
attorneys fees and expenses in presenting this motion and
for such other and different relief as the Court deems just
and proper.

**PLEASE TAKE FURTHER NOTICE:**

That pursuant to CPLR §7804 or other relevant CPLR
provisions, Petitioner requires that answering papers be
served upon the undersigned no less than five (5) days
before the return date of June 26, 2009.

Dated:      White Plains, New York
            May 11, 2009

                              Respectfully,

                              GLENN B. ALLYN
                              Law Offices of
                              Allyn, Hausner & Montanile, PLLC
                              399 Knollwood Road
                              Suite 114
                              White Plains, New York 10603
                              (914) 733-3280

To:  Respondents:
     VILLAGE OF MAMARONECK
     VILLAGE OF MAMARONECK BUILDING DEPARTMENT
     VILLAGE OF MAMARONECK BUILDING INSPECTOR
     VILLAGE OF MAMARONECK DIRECTOR OF BUILDING CODE
     ENFORCEMENT AND LAND USE ADMINISTRATION,
     VILLAGE OF MAMARONECK ZONING BOARD OF APPEALS
     C/O
     Village of Mamaroneck
     Village Hall
     P.O. Box 369
     Mamaroneck, New York 10543
     (914) 777-7731

SUPREME COURT OF THE STATE OF
NEW YORK COUNTY OF WESTCHESTER
--------------------------------X
SHELDRAKE ESTATES
CONDOMINIUMS, LLC and
SHELDRAKE LOFTS, LLC

              **Petitioners,**      Index No.:

    -against-               Date Filed: 05/11/2009

VILLAGE OF MAMARONECK,        VERIFIED PETITION
VILLAGE OF MAMARONECK BUILDING
DEPARTMENT, VILLAGE OF MAMARONECK
BUILDING INSPECTOR, VILLAGE OF
MAMARONECK DIRECTOR OF BUILDING CODE
ENFORCEMENT AND LAND USE ADMINISTRATION,
VILLAGE OF MAMARONECK ZONING BOARD OF APPEALS
--------------------------------X
                        (ORAL ARGUMENT REQUESTED)

State of New York    }
                }
County of Westchester }

    Offer Attia, affirms the following under penalties of
perjury:

    1.   I am the owner and managing member of petitioners
above, and make this affirmation  in support of
petitioners' Article 78 petition, which seeks this Court to
(1) find that petitioner developer acquired a vested right
to pursue the development of the project here under prior
zoning regulations, and ordering that the respondents issue
building permits for petitioner's project known as
"Sheldrake Estates" ("Project") subject to compliance with
that certain letter sent by respondent on July 24, 2008,
however not requiring petitioner to comply with the

respondent's Local Law #5 enumerated therein. (2) Reversing
that decision of the respondent Zoning Board of Appeals
("ZBA") dated April 9, 2009, which denied petitioner's
request for a variance in respect to Section 342-38 of the
Zoning Code.  To provide petitioner with a variance in
respect to a 1.6 Floor Area Ration ("FAR") instead of the
1.2 applied by the ZBA. The ZBA rendered a decision which
was arbitrary and capricious and/or did not appropriate
apply the correct criteria in rendering its decision here.
(3) The award of damages resulting from respondents acts.
And granting Petitioner attorneys fees and expenses in
presenting this motion and for such other and different
relief as the Court deems just and proper.

2.   The petitioners are the owners/developers of a
proposed 96 residential dwelling unit subdivision
(hereinafter "Project").

3.   The Petitioners initially commenced their
application for approvals of a 114 lot residential sub-
division in 2004, by a petition to the respondent's board
of trustees for re-zoning of the underlying property from
mixed use to residential use.

4.    After a lengthy environmental review, including a full draft environmental impact statement and final environmental impact statement with findings adopted by the Village Board of trustees on August 30, 2006, the respondent re-zoned the petitioners' property to RM-3 in order for the petitioners to obtain subdivision and site plan approval for the 114 residential units planed by petitioners and presented to respondent. A copy of the respondent's resolution in respect to the re-zoning of petitioners property dated August 30, 2006 is attached hereto as Exhibit 1.

5.    The Court will note that respondent, in its resolution highly praised the proposed Project, indicated that on numerous levels the Project was a benefit to the Village and the community, and likewise indicated that "[n]o variances from the Zoning Code will be required for the project." See Exhibit 1, page 4.  Because no variances from the Zoning Code were required for the Project under the re-zoning, petitioners could build the Project as anticipated as of right.

6.    The petitioner received final site plan approval from the respondent's planning board, for the Project, on December 17, 2007.  See Exhibit 2, a true copy of the planning board resolution granting approval.  However, final approvals reduced the residential unit count from 114

to 90 residential units plus 6 low income residential
units, thereby approving the project for a total of 96
residential dwelling units.

7.   Petitioners' building permit application, site
plan, and full construction drawings accordingly were filed
with the respondent on December 27, 2007. A $240,000.00
recreation fee was required to be paid, before Bob Galvin,
the chairman of the planning board would sign same in order
that the construction drawings could be processed for
approval by respondent and a building permit issued. See
Exhibit 3 a true copy of the respondent's receipt
indicating payment of this $240,000.00. See also Exhibit
4, a true copy of the building permit application.

8. On behalf of respondent, Village of Mamaroneck, Bob
Galvin signed the site plan and upon information and belief
the construction drawings on December 28, 2007.

9. Further by resolution of the respondent Planning
Board, the prior approval was memorialized and final
changes to the sub-division map determined and approved.
See Exhibit 5 copy of Planning Board resolution filed with
respondent's clerk on January 8, 2008.

10.   By operation of the respondent's law, the
building permit was to be approved or disapproved within a
reasonable time from receipt.  Instead it took respondent
over six months to approve the construction drawings, so

that the building permit could be processed for approval,
and for which formal disapproval was only issued on
November 12, 2008.

11.   On numerous occasions Petitioners asked for the
status of the construction drawing approvals, only to find
that the construction drawings were left on top of a filing
cabinet, in Winter's office and not in fact being reviewed
as required.

12.   Since the plans were just sitting collecting
dust, petitioner asked what he could do to expedite the
process and was told that he could overnight the plans to
Noel Shaw, respondent's reviewing, and consulting engineer,
for his sign off, which in fact petitioner did.  See
Exhibit 6, a true copy of the UPS receipt and tracking
information.

13.   At this point it was around June 12, 2008.
Shortly thereafter full construction approvals were granted
by respondent, as Noel Shaw had signed off on these plans.

14.   At all of the above times, respondent knew that
they were adopting a new local law requiring a reduction in
floor plan ratios for all projects in the Village, local
law #5 ("New Law"). Subsequent to the above final
approvals, respondent's  Local Law No. 5-2008 (the New Law)
was made effective with an effective date of May 15, 2008.
Attached hereto as Exhibit 7  is a true copy of the New
Law.

15.   During the approval process of petitioners building permit application and in December 2007, while respondent placed a moratorium on all building permits, petitioners' building permit application was allowed to continue its processing in order for it to be approved.  An objective indication that the New Law would not apply to the Project.  Consequently, petitioner was continually assured by both respondent's acts and by respondent's themselves, that the New Law would not apply to its project.

16.   After the respondent's outside engineering consultant finally approved the construction drawings as part of the building permit application, on or around June 12, 2008, (which was well pass the date the New Law was enacted on May 15, 2008)and after numerous inquires by petitioner without answer.

17.   On or around June 12, 2008, the petitioner met with John Winter's ("Winter's"), the head of the respondent's building department, an agent of respondent, as petitioners agent was told he would be able to pick up a building permit for the Project, in order for site work to begin.  **Winters at this time advised petitioner that the building permits would be processed and that the New Law did not apply to the Project.**  Winters only required some additional documentation to give Petitioners the building permit, which did not include any reference to the New Law or any matters of substantial significance.

18.  Accordingly, petitioner started site work preparation on the Project on or about June 12, 2008 in anticipation of receipt of the building permit as promised by Winters, and up and until August 8, 2008.  During the time from Winter's indicating the Project was not effected by the New Law, and that a building permit would be forthcoming, and up until approximately August 8, 2008, petitioner had spent roughly an additional $36,320.00 on the Project, for site work preparation, and financing costs of approximately $186,000.00.

19.  At all times in furtherance of the Project all outstanding requirements were being made, $240,000.00 in parkland fees paid, and significant other monies paid for various other items.  To Petitioner's surprise, on July 24, 2008, respondent's building department by Winter's sent petitioner a letter indicating that in order to issue a building permit, petitioner was required to demonstrate compliance with prior conditions, and to provide new calculation of floor plan ratio's ("FAR") in respect to the New Law, which was mistakenly referred to as the new local law #4.  A copy of this July 24, 2008 correspondence is attached hereto as Exhibit 8.

20.  It was not until November 12, 2008 that petitioners' received any formal notice of disapproval with respect to the building permit application filed on December 27, 2007, almost one year earlier. And a Final

formal disapproval on December 8, 2008. See Exhibit 9, a
true copy of a notice of disapproval dated November 12,
2008 and December 8, 2008 notice of disapproval.

21.   The disapproval of petitioner's building permit
at that point was not in accordance with the respondent's
own laws and regulations, whereby the respondent is
required to "approve or disapprove a building permit
applications within a reasonable time."

22.   The petitioner appealed the building inspector's
disapproval and requested a variance from the 1.2 FAR to a
FAR of 1.6. Attached hereto as Exhibit 11, is a true copy
of the application to the ZBA. (Bate stamped page
identifications added for this proceeding and were not
provided for in the original application.).

23.   The ZBA disapproved petitioner's request and
rendered a decision on April 9, 2009. A true copy of which
is attached hereto as Exhibit 12. This article 78 then
ensued.

THE RESPONDENT SHOULD BE
ORDERED TO PROVIDE PETITIONER
WITH A BUILDING PERMIT:

24.   The respondent's inactions and omissions in
failing to review and approve the Project and building
permit application timely, combined with misrepresentations
and inaccuracies cannot under any assessment be interpreted
as a "reasonable time."

28.  Additionally, petitioner spent approximately
$190,000.00 for the initial clean up the site, in
accordance with respondent's requests to do so, during the
approval process.

29.  The year one expenditures totaled approximately
$430,000.00 excluding the costs associated with borrowing
monies to pay these amounts and soft costs for the
development of the project during this time.

30.  The year 2 and year 3 totals amounted to
approximately $500,000.00, excluding the costs associated
with borrowing monies to pay these amounts and soft costs
for the development of the project.

31.  The interest costs associated with paying for the
improvements required by respondents in years 1-4 are in
access of $350,000.00.

32.  In 2007 (year 4 of the Project), the respondent
required petitioner to remediate the site in accordance
with the DEC regulations, contingent and prior to receiving
approvals, which should not have been required in the first
instance to obtain approvals, instead approvals granted
conditionally on the subsequent remediation of the Project
site.

33.  The remediation costs totaled approximately
$1,200,000.00.  The remediation was required by respondents
before approvals would be given on the Project.

34.  In so doing, respondent caused petitioner to
loose 18-21% grants from New York Brownfield programs.
Such grants upon information and belief are calculated
based upon a formula based upon the total cost of the
project at issue, here approximately in access of
$47,000,000.00, which would have resulted in approximately
$9,000,000.00 to $10,000,000.00 in loss of grants and
damages to petitioners.  In addition, the interest costs
associated with paying for the improvements required by
respondent in that given year totaled approximately
$210,000.00.

35.  As a result of re-zoning that was required of the
Project M-1 (commercial multi use) to RM-3 (only
residential use), a prior business such as the one
petitioner vacated at respondent's request, or other
commercial uses under the former M-1 zoning could no longer
conduct business on the site.  This results in significant
future loss of income and rental options, which the Project
was at all times contemplated to replace such income
production.   Moreover, if the New Law applies to the site
now, with the re-zoning, nothing of any significance could
be built on the site, and/or any project of the seize to
secure adequate financing.  Further petitioners financing
is based upon the approval of 96 residential dwelling
units, something short of this will result in loss of
financing.

36.   The Project with an "as of right" building of 114 residential dwelling units, had an "as is" value of the underlying property set at $18,600,000.00, see Exhibit 10, at page 90, and a as built value of $58,150,000.00, page 80.

37.   With the significant loss of residential units as a result of the New Law, petitioners approximate a loss resulting in a loss of at least 40% to 50% of the 96 approved units, resulting in at best 38 to 48 units. Assuming that the "as is" value is reduced accordingly, the property would be worth no more then $9,000,000.00, which when you apply the amount spent to date, petitioners would realize a loss of approximately $7,000,000.00. However, as a result of newly imposed New York State fire code regulations there may not even be an ability secure approvals for the number of units referenced above.

8.   Up and until August 8, 2008, petitioner spent $14,000,000.00 to $15,000,000.00 in total on the Project which included the costs to purchase the underlying property, the year 1-4 costs imposed upon petitioners by respondent, the soft costs for developing the project and the interest costs associated with borrowing the monies for the Project.  See Exhibit 13, a true copy of transaction statement evidencing the monies spent in connection with the Project and as referenced in this paragraph.

38.   Likewise on or about December 31, 2007, petitioner
paid the respondent the sum of $240,000.00 in respect to
recreation fees and in accordance with final approval
requirements of the respondent.   Supra.
Approximately $900,000.00 was paid by petitioner in
respect to engineering, architectural, and other
development related expenditures, "soft cost" expenses for
the development of the Project.

39. The purported purpose of Local Law 5-2008 was not
intended to apply to the Project, but instead the intent
was that "Floor Area Ratio (FAR) controls were incorporated
into the Village's Zoning Code because an increasing number
of extremely large homes impacted visually upon nearby
properties.  … The purpose of this local law is to amend
and clarify building floor area ratios and their
calculation … to assure that new and expanded buildings
will be in scale with surrounding buildings and the
character of the community." See Exhibit 7.

40.   Yet this New Law which was promoted, upon
information and belief, by respondent's mayor and a new
board of trustees, with the knowledge of the planning
board, is now apparently being used to eliminate the
Project after it was already approved by this very same
planning board and praised by the respondent's prior board
of trustees at its inception.

The planning board granted sub-division approvals to
petitioners, and site plan approvals which allowed 96
residential units.  Which unit count was original reduced
from 114 units to 90 units and 6 low income residential
units, making the total 96 units.

41.   Moreover, if the planning board really wanted the
proposed New Law to apply, why did it not place these
requirements on the Petitioner when the petitioner was
seeking approvals and confirming the now approved plans to
planning board requirements, and after the board of
trustees and planning board caused petitioner to spend
and/or pay more then $2,130,000.00 (year 1-4) direct costs
to clean up, and remediate the Project, before respondent
would grant, and then granted sub-division and site plan
approvals and changed the zoning use so the Project could
be built as contemplated. Additionally, petitioners
directly paid respondents $240,000.00 in recreation use
fees, which was a condition of final sub-division
approvals.

42.   The Project is not an "extremely large home" and
consequently should not even be considered a building
enumerated in the New Laws purpose and intent.

43.   Because petitioners have incurred substantial
expenses and made substantial changes to the underlying
property, petitioners have a vested right to develop the

Project in accordance with the prior zoning requirements.
See *Town of Orangetown v. Magee*, 88 N.Y. 2d 41 (1996). See
also *In the Matter of Ellington Construction Company v.
Zoning Board of Appeals of the Incorporated Village of New
Hempstead*, 77 N.Y. 2d 114 (1990). (Court of Appeals
affirmed the lower court's directing that Village inspector
issue a building permit as substantial construction and
substantial expenditures were made by developer prior to
effective date of more restrictive zoning amendment by
respondent Village there); *In the Matter of Exeter Building
Corp., v. Town of Newburgh*, 49 A.D.2d 731 (2nd Dept. march
18, 2008);

    44. <u>After five years of improvements made to the
Project at respondents request, and substantial costs
incurred by Petitioners</u>, at this stage, and after final
subdivision and site plan approvals were granted, it would
be inequitable, just plan unfair, and cause petitioners
serious economic hardship or loss to impose upon petitioner
the FAR requirements of Local Law #5.  See *Preble
Aggregate, Inc. v. Town of Preble*, 263 A.D.2d 849 (Third
Dept. 1999); *Glacial Aggregates,LLc v. Town of Yorkshire*,
2006 WL 2660676 (N.Y. Supreme) ( Vested right where town's
actions cause a serious hardship or loss); *In the Matter of
RC Enterprises v. Town of Patterson*, 42 A.D. 3d 542 (2nd
Dept. July 24, 2007).

44. It is crystal clear that the petitioners have both undertaken substantial construction to the underlying property and Project, and made substantial expenditures in respect of the underlying property, and the Project, prior to the respondent's adoption of the New Law on May 15, 2008, and in accordance with respondent's mandates and assurances that the Project would be approved.

45. Accordingly, because of the substantial construction and substantial expenditures made, prior to the New Law, petitioners have clearly established a vested right in the property and the right there under to have a building permit issued for the construction of the 96 units approved both in the sub-division filing, and site plan approval.

46. It is also clear that the petitioners will face and have faced substantial hardships and will incur significant economic loss's if the New Law is applied to the Project and a building permit not issued.

47. The petitioners in the process of approvals for the Project had to re-zone the underlying property, which was required of petitioners in furtherance of its seeking sub-division and site plan approvals by respondent.

48. All this was done with the absolute blessings of the respondent, in fact the respondent encouraged the development of this Project as it alleviated both an eye saw from the community and an existing use that was potentially harming the environment, and/or that was pre-existing and use detrimental the respondents master zoning plans.

49. But rather the allow the petitioners to develop the Project as the respondent's had at all times approved, after the petitioner spent millions of dollars cleaning up the property, and the remediation any environmental hazards, and vacating the prior offending paying tenants, the respondent imposed the New Law that would basically restrict any ability to build anything close to what was presented for almost five years and after almost $15,000,000.00 was spent by petitioners, so that now the use would be so restrictive that petitioners could never recoup this investment, or any institution would lend monies toward development as there would not be a loan to value anywhere near $15,000,000.00, or any project that could be built that would recover this $15,000,000.00 already spent.

50. In fact, the petitioners property is now in foreclosure, because without building permits, no institution will lend any monies toward the property, and the property has a negative value to the loans already secured.

51. Finally, petitioners have secured a statutory vested right here as $240,000.00 was paid to respondent as required to file the final sub-division and site plans, which provided for the building of 96 residential dwelling units, and the petitioner at no time abandoned its pursuit of this objective.

52. It is inequitable to say the least, that the respondent should benefit after requiring the petitioners to spend large sums of monies here and improve the property and eliminate a potential harm to the community, all with promises that the Project would be approved and in fact approving the sub-division and site plan for 96 residential dwelling units, and thereafter adopting the New Law which renders the property virtually un-developable and/or incapable of producing revenue of monies to cover the amount spent by petitions to so improve the property.

53. As a direct result of respondent's actions, the petitioners have been causes to lose approximately $61,000,000.00 in value, loss of the Brownfield funds and grants, resulting in approximately $71,000,000.00 in damages.

## THE ZBA DENIAL OF PETITIONER'S VARIANCE REQUEST WAS ARBITARY AND CAPRICIOUS AND CONTRARY TO THE APPLICABLE BALANCING TEST REQUIRED:

54. The record shows contrary to the ZBA's determination that there would be an undesirable change to the character of the neighborhood by granting the FAR variance.   In fact this project as the Village Board of Trustees found would be a benefit to the neighborhood.  See Exhibit 1.   Moreover, the FAR requirements applied by the ZBA were not meant to be applied to the project here but to very large homes in the Village.  Moreover, the FAR as calculated by the ZBA was incorrect.  The ZBA included areas which should not have been included as argued by petitioner and which arguments accompanied petitioner application to the ZBA.   There is in an insufficient record to justify this finding by the ZBA that there would be an undesirable change to the character of the neighborhood by granting the FAR variance.

55. The record amply demonstrates that there is no feasible alternative to the petitioner here. It seems that the ZBA in its review of this arm of the balancing test sought to redesign a project which was already approved, praised by the Village Board of Trustees and for which significant amounts of monies were expanded. That is an improper standard of review.

56. The requested variance is not substantial. First, much of the disputed impact is based upon the garage being included in the FAR determination, which as argued to the ZBA should not apply. Next, the variance is not substantial as the FAR was never intended to be used in a calculation of floor area in a project like this. The Village already acted in accepting this project when it approved the project and eliminated a toxic waste dump which existed before petitioner moved forward with this project and in reliance on the Village honoring its approval of the project after significant amount of monies were spent to get the project through approvals.

57. The record has not proof to sustain a finding that the proposed variance would have an adverse effect or impact on the physical or environmental conditions in the

neighborhood or district.  In fact the project as the Village Trustees found would have an opposite effect.  The project.  Construction of the proposed action would replace a visually unattractive commercial property with a residential development of 4.5 story buildings including landscaping, parking areas and driveways."  See page 8, Exhibit 1.  "The Shledrake Estates development would result in the conversion of manufacturing land and an automotive junkyard to a residential development.  The increased market value of the project site, with these improvements, would result in an increase in property tax revenues."  Id. at page 10.  Further, there were no found adverse environmental conditions by the project on the community."  Id. At page 11.  The ZBA's findings on this arm of the balancing test were not supported by the record and contrary to the record.

58. Finally, the last arm of the balancing test is in petitioner's favor.  The alleged difficulty was not "self-created" by the petitioner's delay, this is well supported in the record.  It was the Village that cause all the delays here.  The Village failed to follow its own laws with respect to reviewing the building permit timely and issuing same prior to the adoption of the new FAR formula.

59.   The ZBA rendered a decision that was against the weight of the evidence and unsupported in the record.   The ZBA made findings without any proof or evidence to support such findings, which findings made by the ZBA were therefore arbitrary and capricious.

60. Had the ZBA made the appropriate findings as the record will demonstrate with respect to the areas it was required to balance in determining whether to grant the variance here, all of these areas of review for balancing would be in favor of the petitioner, or at least significantly in petitioners favor, which would have required the ZBA to approve the variance requested.

WHEREFORE, petitioner requests that this Court enter Judgment

(1)    finding that petitioner developer acquired a vested right and/or statutory vested right to pursue the development of the project here under prior zoning regulations,

(2)  ordering that the respondent issue building permits for petitioner's Project  and declaring that respondent's Local Law #5 enumerated therein does not apply to the Project here.

(3)   Reverse the decision of the ZBA denying petitioner's request for a variance and grant such variance in favor of the petitioner.

(4)  Judgment against respondent's in an amount exceeding the jurisdiction minimum of this Court and as determined at trial, and

(5)   An award of punitive damages against the respondent in
an amount determined by a jury, and

(6)   And granting Petitioner attorneys fees, cost of this
litigation, and such other and different relief as the
Court deems just and proper.


Dated:     White Plains, New York
           May 11, 2009

                              Respectfully,


                              GLENN S. ALLYN

To:   Respondents:
      VILLAGE OF MAMARONECK
      VILLAGE OF MAMARONECK BUILDING DEPARTMENT
      VILLAGE OF MAMARONECK BUILDING INSPECTOR
      VILLAGE OF MAMARONECK DIRECTOR OF BUILDING CODE
      ENFORCEMENT AND LAND USE ADMINISTRATION,
      VILLAGE OF MAMARONECK ZONING BOARD OF APPEALS
      C/O
      Village of Mamaroneck
      Village Hall
      P.O. Box 369
      Mamaroneck, New York 10543
      (914) 777-7731

UPREME COURT OF THE STATE OF
NEW YORK COUNTY OF WESTCHESTER
---------------------------X
SHELDRAKE ESTATES
CONDOMINIUMS, LLC and
SHELDRAKE LOFTS, LLC

        *Petitioners,*      Index No.:
  -against-           Date Filed: 05/11/2009

VILLAGE OF MAMARONECK,
VILLAGE OF MAMARONECK BUILDING
DEPARTMENT, VILLAGE OF MAMARONECK
BUILDING INSPECTOR, VILLAGE OF
MAMARONECK DIRECTOR OF BUILDING CODE
ENFORCEMENT AND LAND USE ADMINISTRATION,
VILLAGE OF MAMARONECK ZONING BOARD OF APPEALS

         *Respondents.*
                       X

STATE OF NEW YORK    }
                 }SS:
COUNTY OF WESTCHESTER }

   Offer Attia duly sworn deposes and says:

   1.   I am the owner and managing member of the
petitioners in the within action and make this verification
on behalf of these petitioners.

   2.   I have read the foregoing, and know the contents
thereof, and the same is true to my knowledge,.except to
matters therein stated to be alleged by information and
belief, and as to those allegations I believe same to be
true and correct.

                  BY: _____
                       OFFER ATTIA

   Sworn to before me this
11th day of May, 2009

   _____
   NOTARY PUBLIC



## Part 130
## Certification

       By signing a paper, an attorney or party certifies that, to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, (1) the presentation of the paper or the contentions therein are not frivolous as defined in Section 130-1.1(c), Rules of the Chief Administrator, and (2) where the paper is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom, and (ii) the matter was not obtained in violation of 22 NYCRR 1200.41-a [DR 7-111].

       The undersigned has complied with subsection (c) of Section 130-1.1 and Section 130-1.1-a, Rules of the Chief Administrator.

```
                         Attorneys for Petitioner


                         GLENN B. ALLYN
                         Law Offices of
                         Allyn, Hausner & Montanile, PLLC
                         399 Knollwood Road
                         Suite 114
                         White Plains, New York 10603
                         (914) 733-3280
```

May 11, 2009

2.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "2" of the Verified Petition.

3.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "3" of the Verified Petition.

4.    Admits the allegations contained in paragraph "4" of the Verified Petition.

5.    Deny each and every allegation set forth in paragraph "5" of the Verified Petition.

6.    Deny each and every allegation set forth in paragraph "6" of the Verified Petition.

7.    Deny each and every allegation set forth in paragraph "7" of the Verified Petition, except admit that petitioners paid a $240,000.00 recreation fee.

8.    Deny each and every allegation set forth in paragraph "8" of the Verified Petition.

9.    Deny each and every allegation set forth in paragraph "9" of the Verified Petition.

10.    Deny each and every allegation set forth in paragraph "10" of the Verified Petition.

11.    Deny each and every allegation set forth in paragraph "11" of the Verified Petition.

12.    Deny each and every allegation set forth in paragraph "12" of the Verified Petition.

8344165v1

2

12/18/2009  18:18   914-995-8554                W.C. SUPREME COURT                    PAGE  04/23

13.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "13" of the Verified Petition.

14.     Deny each and every allegation set forth in paragraph "14" of the Verified Petition.

15.     Deny each and every allegation set forth in paragraph "15" of the Verified Petition.

16.     Deny each and every allegation set forth in paragraph "16" of the Verified Petition.

17.     Deny each and every allegation set forth in paragraph "17" of the Verified Petition.

18.     Deny each and every allegation set forth in paragraph "18" of the Verified Petition.

19.     Deny each and every allegation set forth in paragraph "19" of the Verified Petition, except admits petitioners paid a $24,000.00 recreation fee.

20.     Deny each and every allegation set forth in paragraph "20" of the Verified Petition.

21.     Deny each and every allegation set forth in paragraph "21" of the Verified Petition.

22.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "22" of the Verified Petition.

23.     Deny each and every allegation set forth in paragraph "23" of the Verified Petition.

3

#344165v1

24.     Deny each and every allegation set forth in paragraph "24" of the Verified Petition.

25.     Deny each and every allegation set forth in second paragraph "23" of the Verified Petition.

26.     Deny each and every allegation set forth in second paragraph "24" of the Verified Petition.

27.     Deny each and every allegation set forth in paragraph "25" of the Verified Petition.

28.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "26" of the Verified Petition.

29.     Deny each and every allegation set forth in paragraph "27" of the Verified Petition.

30.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "28" of the Verified Petition.

31.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "29" of the Verified Petition.

32.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "30" of the Verified Petition.

33.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "31" of the Verified Petition.

34.     Deny each and every allegation set forth in paragraph "32" of the Verified Petition.

0344165v1

4

35.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "33" of the Verified Petition.

36.     Deny each and every allegation set forth in paragraph "34" of the Verified Petition.

37.     Deny each and every allegation set forth in paragraph "35" of the Verified Petition.

38.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "36" of the Verified Petition.

39.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "37 " of the Verified Petition.

40.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in second paragraph "8" of the Verified Petition.

41.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "38" of the Verified Petition, except admits petitioner paid a $240,000.00 recreation fee.

42.     Deny each and every allegation set forth in paragraph "39" of the Verified Petition.

43.     Deny each and every allegation set forth in paragraph "40" of the Verified Petition.

44.     Deny each and every allegation set forth in paragraph "41" of the Verified Petition, except admits petitioners paid a $240,000.00 recreation fee.

5344165v1

5

45.     Deny each and every allegation set forth in paragraph "42" of the Verified Petition.

46.     Deny each and every allegation set forth in paragraph "43" of the Verified Petition.

47.     Deny each and every allegation set forth in paragraph "44" of the Verified Petition.

48.     Deny each and every allegation set forth in second paragraph "44" of the Verified Petition.

49.     Deny each and every allegation set forth in paragraph "45" of the Verified Petition.

50.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "46" of the Verified Petition.

51.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "47." of the Verified Petition.

52.     Deny each and every allegation set forth in paragraph "48" of the Verified Petition.

53.     Deny each and every allegation set forth in paragraph "49" of the Verified Petition.

54.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "50" of the Verified Petition.

55.     Deny each and every allegation set forth in paragraph "51" of the Verified Petition.

#344165v1

12/19/2009  18:18   914-995-8654                W.C. SUPREME COURT                      PAGE  08/23

56.   Deny each and every allegation set forth in paragraph "52" of the Verified Petition.

57.   Deny each and every allegation set forth in paragraph "53" of the Verified Petition.

58.   Deny each and every allegation set forth in paragraph "54" of the Verified Petition.

59.   Deny each and every allegation set forth in paragraph "55" of the Verified Petition.

60.   Deny each and every allegation set forth in paragraph "56" of the Verified Petition.

61.   Deny each and every allegation set forth in paragraph "57" of the Verified Petition.

62.   Deny each and every allegation set forth in paragraph "58" of the Verified Petition.

63.   Deny each and every allegation set forth in paragraph "59" of the Verified Petition.

64.   Deny each and every allegation set forth in paragraph "60" of the Verified Petition.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

65.   Upon information and belief, this action is barred by the applicable statute of limitations.

#344165v1

7

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

66.     Upon information and belief, the Petition fails to state a cause of action against the answering respondents.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

68.     The answering respondents not being fully advised as to all of the facts and circumstances surrounding the allegations complained of herein, hereby asserts and reserves unto themselves the defenses of accord and satisfaction, arbitration and award, discharge of bankruptcy, estoppel, failure of consideration, failure to exhaust administrative remedies, laches, Statute of Limitations, waiver, and other matter constituting an avoidance or an affirmative defense which further investigation of this matter may prove applicable herein.

WHEREFORE, respondents Village of Mamaroneck and Planning Board of the Village of Mamaroneck demand Judgment dismissing the Verified Petition together with costs and disbursements of this action, and such other, further and different relief as this Court deem just and proper.

Dated: New York, New York
        December 15, 2009

8344163v1

8

Yours, etc.

D'AMATO & LYNCH, LLP

BY: _____

ARTURO M. BOUTIN, ESQ.
Attorneys for Respondents
VILLAGE OF MAMARONECK
VILLAGE OF MAMARONECK
BUILDING DEPARTMENT, VILLAGE
OF MAMARONECK BUILDING
INSPECTOR, VILLAGE OF
MAMARONECK DIRECTOR OF
BUILDING CODE ENFORCEMENT
AND LAND USE ADMINISTRATION
and VILLAGE OF MAMARONECK
ZONING BOARD OF APPEALS
70 Pine Street
New York, New York 10270
(212) 269-0927
Our File No.: 101-75536

TO:   ALLEYN, HAUSNER & MONTANILE, LLP
      Attorneys for Petitioners
      399 Knollwood Road
      Suite 114
      White Plains, New York 10603
      (914) 733-3280

6344165v1                        9

12/18/2009  10:18   914-999-8654                     W.C. SUPREME COURT                              PAGE  11/23

# ATTORNEY'S VERIFICATION

ARTURO M. BOUTIN, an attorney duly admitted to practice in the Courts of the State of New York, affirms the following under penalty of perjury, being duly sworn, deposes and says:

1.     I am associated with the firm of D'AMATO & LYNCH, LLP, the attorneys of record for respondents, VILLAGE OF MAMARONECK VILLAGE OF MAMARONECK BUILDING DEPARTMENT, VILLAGE OF MAMARONECK BUILDING INSPECTOR, VILLAGE OF MAMARONECK DIRECTOR OF BUILDING CODE ENFORCEMENT AND LAND USE ADMINISTRATION and VILLAGE OF MAMARONECK ZONING BOARD OF APPEALS, in the within action.

2.     I have read the foregoing VERIFIED ANSWER and know the contents thereof.

3.     The same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and, as to those matters, I believe them to be true.

4.     The reason this Verification is made by me and not by the respondents VILLAGE OF MAMARONECK VILLAGE OF MAMARONECK BUILDING DEPARTMENT, VILLAGE OF MAMARONECK BUILDING INSPECTOR, VILLAGE OF MAMARONECK DIRECTOR OF BUILDING CODE ENFORCEMENT AND LAND USE ADMINISTRATION and VILLAGE OF MAMARONECK ZONING BOARD OF APPEALS, is because said respondents are not within the county where I have my office.

5.     The grounds for my belief as to all matters in the Verified Answer not

8344165v1                                    10

12/15/2009  16:16   914-995-8654                 N.C. SUPREME COURT                          PAGE 13/23

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK )

Arlett Villanueva, being duly sworn, deposes and says:

Deponent is not a party to the action, is over 18 years of age and resides in Queens, New York. On December 15, 2009 deponent served the within Answer to the Verified Petition upon:

ALLEYN, HAUSNER & MONTANILE, LLP
Attorneys for Petitioners
399 Knollwood Road
Suite 114
White Plains, New York 10603
(914) 733-3280

by depositing true copies of same in a post-paid wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York, properly addressed to said attorneys at the above addresses designated by them for that purpose.

                                                    _____
                                                            Arlett Villanueva

Sworn to before me this
15ᵗʰ day of December, 2009

_____
         Notary Public

ALFRED A. D'AGOSTINO, JR.
Notary Public, State of New York
No. 02DA4656730
Qualified in Nassau County
Commission Expires _____ 5/30/2011

4314776v1

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    :
                            : SS.:
COUNTY OF NEW YORK  :

Harley Traven, being duly sworn, deposes and says:

1.    I am over 18 years of age and not a party to this action.

2.    On September 28, 2010, I served a true and accurate copy of the within document

to be served upon the persons on the attached list:

☐    **FIRST CLASS MAIL**, by mailing a true copy of the attached papers, enclosed and properly sealed in a postpaid envelope, which I deposited in an official depository under the exclusive care and custody of the United States Postal Services within the State of New York;

☒    **FEDERAL EXPRESS**, by depositing a true copy thereof enclosed in a Federal Express wrapper and made proper arrangements for delivery of same;

☐    **EXPRESS MAIL**, by mailing a true copy of the attached papers, enclosed and properly sealed in a postpaid Express Mail envelope, which I deposited in an official depository for same under the exclusive care and custody of the United States Postal Services;

☐    **ELECTRONIC MEANS**, by facsimile, email or other electronic means as set forth on the annexed list.

Signature: _____

Sworn to before me on September 28, 2010.

_____
Notary Public

DAVID WANDER
Notary Public, State of New York
No. 02WA5033368
Qualified in New York County
Commission Expires January 25, 2011

00410195

5

**Service List**

Clerk
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, NY  10601-4140

Clerk
Supreme Court of the State of New York
Westchester County
111 Dr. Martin Luther King Jr. Blvd
White Plains, NY 10601

Kenneth G. Roberts, Esq.
Cozen O'Connor
277 Park Avenue
New York, NY 10172
kroberts@cozen.com

Arturo M. Boutin
D'Amato & Lynch, LLP
Two World Financial Center
New York, New York 10282
Aboutin@damato-lynch.com

00410195

6